JOHN H. PATE, plaintiff in error, *vs.* O. A. LOCHRANE, trustee, defendant in error.

(LOCHRANE, C. J., did not preside in this cause.)

When there was a trust-estate for a woman and her children, and by the terms of the trust the husband was entitled to the annual income for the support of himself and family, without account, and an action was brought, at law, to make the trust-estate liable for necessaries furnished the beneficiaries and the trust-estate, and it appeared that the husband, owning a plantation side by side with the other, worked them together as one place, and, during the year, supplies were furnished him and goods sold to the hands on orders from him, as an advance on their part of the crop, and the share of the hands was, at the end of the year, to the extent of these advances, retained and sold with the general crop, and the jury found for the plaintiff the full amount claimed:

*Held,* That there was no error in the Court, in granting a new trial, on the ground that the jury found contrary to the evidence.

New Trial. Trust-Estates. Before Judge COLE. Bibb Superior Court. April Term, 1870.

Pate sued Lochrane, as trustee for Mrs. Mary F. Lamar, wife of L. M. Lamar, upon an open account for $477 04 for goods, wares and merchandize, averred to have been furnished to Mrs. Lamar and family and to laborers engaged in working for said trust-estate upon her plantation therein described. About $100 00 worth of the items, and the first charged, are such as a lady and family would use; the balance was mainly for goods sold to laborers. The defense was that the trust-estate was not liable.

The plaintiff showed that Lamar told plaintiff that Mrs.

Lamar wished about $75 00 worth of goods, and wished plaintiff to let her have them, saying that when the cotton on said plantation where he, Lamar, and his family resided, was sold, he would pay the amount. She came and bought the goods. Afterwards during the year, upon Lamar's order, the other goods were furnished to him and said laborers. It was shown that the plantation was Mrs. Lamar's, and that it was worked, in 1867, by Lamar as hers, and that Lamar was now a bankrupt.

The defendant read as evidence an ante-nuptial contract between Lamar and his wife, by which her property was conveyed to a trustee for her benefit, with certain remainders, etc., immaterial here, by which Lamar's interest and control of the property was specified, as follows: "To be in no wise subject to the present or any future debts or liabilities of the said Lucius M., but it is the true intent and meaning of these presents that the said Lucius M. shall have the control and management of said property herein conveyed, so far as the rents, issues and profits of the same, during the continuance of the coverture, for the proper support and maintenance of himself, said Mary Francis, or any child or children which may be born to them, and without other accountability for said rents, issues and profits during said coverture."

L. M. Lamar testified that in 1867 he controlled the plantation in Pulaski county, known as the Lamar place, containing over three thousand acres of land, fifteen hundred acres of which was his and the balance belonged to said trust-estate; that the whole was worked together without regard to which was his and which was the trust-estate's; no goods were bought from plaintiff for the use of the plantation or trust-estate except those sold to the family for its use. The plantation supplies were obtained from Lathrop & Company, of Savannah, by him as agent of the trust-estate, by direction of the trustee, and a lien was given upon the whole crop to pay for them. The goods obtained by the laborers from plaintiff was for their own use. He arranged with plaintiff

Pate *vs.* Lochrane.

to furnish goods to the laborers on the plantation, promising to deliver to plaintiff the cotton which should fall to the share of the laborers to pay the debt. And he did deliver, to the warehouse, the cotton to pay what the laborers owed plaintiff, but cotton fell to such a low price, he, Lamar, was compelled to send the cotton to Savannah to pay Lathrop & Company. He made this arrangement with plaintiff for the benefit of the laborers, not for the benefit of the trust-estate. The proceeds of the cotton were applied to paying Lathrop & Company for plantation supplies. He acted as agent of the trustee in managing and cultivating said plantation in 1867. When he settled with the laborers he charged them with the goods charged in plaintiff's said account, as bought by them, and the laborers allowed the same in the settlement. This settlement was in 1868.

Defendant's counsel requested the Court to charge the jury, that if the cotton was under a prior lien to Lathrop & Company, the fact that this cotton was turned over to Lathrop & Company to pay the plantation debt, does not make the trust-estate liable to plaintiff. He refused so to charge, but charged, that these facts might render the trust-estate liable. He further charged, that if, at the time the account was contracted, Lamar had an individual farm upon which said laborers were also employed, and this contract was an individual contract on the part of Lamar, the laborers and the plaintiff, Lamar, is liable, (and the trust-estate is not, unless it received the exclusive benefit of the same.) The record is indistinct, and the words in ( ) are written as what is supposed to be meant by it.

The jury found for the plaintiff for the full sum sued for, and judgment was entered against said trust-estate. Defendant's counsel moved for a new trial, upon the grounds, that the Court erred in refusing to charge as requested, and in charging as he did, and because the verdict is contrary to law. The Court granted a new trial, upon the ground, that the verdict was contrary to the law and evidence. This is assigned as error.

LANIER & ANDERSON, for plaintiff in error.

A. O. BACON, for defendant.

McCAY, J.

We do not think the question, which has been so elaborately argued, fairly arises in this case. Admitting that the estate of a *cestui que trust* is liable for necessaries furnished either to the estate or to the beneficiaries, we do not think the facts of this record make out the condition required.

These goods were furnished to the husband, and for his *own* use. By the terms of the trust, he was to be without liability to account, and he was clearly carrying on this trust plantation in common with his own. Who furnished the mules, the provisions, the tools, the seed, and footed the general expenses of the enterprise? How many acres of the whole planted belonged to the trust-estate, and what portion of the proceeds? All these questions must be solved before a jury could say that the trust-property should bear the burden of this particular debt. The enterprise of the husband in planting was in a common planting of both his own individual place, and of the land belonging to the trust. This account was contracted to pay the laborers who worked for the husband, in this enterprise, upon the common land.

It is true, the evidence shows that cotton, belonging to the negroes, sufficient to pay their advances, was left with Mr. Lamar, and the proceeds of the sale of it went to his credit. But Mr. Lamar was not the owner of this trust property, and it is one thing to pay money to him, and another to pay it to the use of these beneficiaries. Perhaps a Court of Equity, after a complete investigation of the affairs of this planting enterprise, and after ascertaining just what interest the trust-estate had in it, and a full account of how much it had expended and received, might decree that a proportionate share of this account should be paid out of the trust-property, but so far as this evidence shows, and so far as any

Court of law can investigate the matter, we do not see how, in justice, the trust-estate shall be made liable to pay it, even under our very liberal rules for proceeding, at law, against trustees and trust property.

Judgment affirmed.